UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

SANFORD LTD., *et al.*,

Defendants.

Criminal Case No. 11-cr-352 (BAH)
Judge Beryl A. Howell

## MEMORANDUM OPINION

In this maritime case, three Defendants – Sanford Ltd. ("Sanford"), a shipping company that owns and operates the fishing vessel *San Nikunau*; and two individuals, James Pogue and Rolando Ong Vano, who served at different times as the Chief Engineer of the ship – are charged with violating federal criminal laws related to their alleged discharge of oil-contaminated sludge and bilge waste into the ocean and the alleged maintenance of false records regarding these discharges. The investigation that led to these charges arose from a United States Coast Guard inspection of the *San Nikunau* at Pago Pago, American Samoa in July 2011. The superseding indictment in this case charges the defendants with conspiracy, in violation of 18 U.S.C. § 371; failing to maintain an accurate oil record book, in violation of 33 U.S.C. § 1908(a), 18 U.S.C. § 2 and 33 C.F.R. 151.25; falsification of records, in violation of 18 U.S.C. § 1519; obstruction of justice, in violation of 18 U.S.C. §§ 1505 and 2; and unlawful discharge of oil waste, in violation of 33 U.S.C. §§ 1907(a) and 1908(a), 18 U.S.C. ¶ 2 and 33 C.F.R. 151.10(b). The defendants have moved for a bill of particulars pursuant to Fed. R. Crim. P. 7(f) because they claim that the superseding indictment in this case fails to identify the charges against them with sufficient particularity. For the reasons discussed below, the Court denies the motion for a bill of particulars.

I.    **BACKGROUND**

Defendant Sanford is a New Zealand corporation that allegedly owns and operates the fishing vessel *San Nikunau*. Superseding Indictment, ECF No. 22 ("SI") ¶ A.1. The other two defendants, Rolando Ong Vano and James Pogue, are individuals who allegedly served as the Chief Engineer of the *San Nikunau* during different periods of time from 2007 to 2011. *Id.* ¶¶ B.1-2. The superseding indictment alleges that the *San Nikunau* transported fish to ports in the United States, including Pago Pago, American Samoa and elsewhere. *Id.* ¶ C.1. The *San Nikunau* had an Engine Department, led by the Chief Engineer, with responsibility for the operation of various systems on the ship, including a device known as an Oil Water Separator. *Id.* ¶ C.2.

The government brought this case to enforce United States laws implementing an international treaty that regulates discharges of oil from vessels at sea – The International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (the "MARPOL Protocol"). *Id.* ¶ D.1. The MARPOL Protocol was enacted into U.S. law by the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1901 *et seq*, which makes it a crime for any person knowingly to violate the MARPOL Protocol, APPS, or regulations promulgated under APPS. As relevant here, under the MARPOL Protocol and APPS, oil-contaminated waste from a ship may be discharged overboard into the sea only if it contains 15 parts per million or less concentration of oil. *Id.* ¶ D.2. An "Oil Water Separator" is a technical device used to lower the oil content of oil-contaminated waste so that the waste may legally be discharged overboard. *Id.* APPS regulations require ships of 400 gross tons or more, such as the *San Nikunau*, to maintain a log known as an Oil Record Book in which all disposals of certain types of waste must be recorded, including the disposal or discharge overboard of oil residue and bilge waste. *Id.* ¶ D.3. Bilge waste is water originating from spills and leaks from piping, tanks, and from rain and waves, which may

be contaminated with oil and other engine fluids. *Id.* ¶ D.2. Such waste may be discharged overboard after processing through the Oil Water Separator. *Id.*

### A. Procedural History

The grand jury returned the original indictment in this case against defendant Sanford on December 6, 2011. ECF No. 1. On December 16, 2011, the Court heard a motion from three Filipino crewmembers of the *San Nikunau* who are being held as material witnesses in connection with this criminal case. *See* No. 11-mc-580, Minute Entry dated December 16, 2011. The material witnesses sought to be released or for their depositions to be ordered pursuant to Fed. R. Crim. P. 15(a)(2). *See* No. 11-mc-580, ECF No. 27. The Court denied the motion of the material witnesses without prejudice at that time. *See* No. 11-mc-580, Minute Order dated December 16, 2011.

Three days later, on December 19, 2011, Sanford was arraigned on the indictment and Rule 15 depositions of the three material witnesses were scheduled for the week of January 9, 2012. *See* Minute Entry dated December 19, 2011. On December 22, 2011, the government filed criminal complaints against the two individual defendants, Pogue and Vano. ECF Nos. 10-11. The preceding day, upon learning that the United States intended to file complaints against the individual defendants, counsel for the material witnesses renewed the motion for the witnesses' release, anticipating that their scheduled depositions would need to be rescheduled due to the addition of new defendants. *See* No. 11-mc-580, ECF No. 29.

On December 29, 2011, defendant Sanford filed a motion for a bill of particulars containing 66 separately numbered requests for additional details concerning each count in the indictment. ECF No. 16 ("BOP Mot."). The motion also demanded that the responses to each particular request be provided by January 4, 2012 in order for the defendant to have adequate time to prepare for the depositions then scheduled for the following week.

On January 4, 2012, Vano and Pogue, the two new defendants added by the superseding indictment, made initial appearances before the Court. The Court also heard argument on the material witnesses' renewed motion for release, which had been filed on December 21, 2011. The Court again denied the material witnesses' motion without prejudice. *See* No. 11-mc-580, Minute Order dated Jan. 4, 2012.[1] Given the likelihood of a superseding indictment in the case, the Court directed counsel for all parties and for the material witnesses to confer regarding the scheduling of Rule 15 depositions and directed counsel for the government to "submit a motion, if necessary, for postponement of the [previously] scheduled depositions to a mutually agreed upon time that is as prompt as possible while affording all defendants approximately thirty days from the date of their indictment." *Id.*[2]

On the following day, January 5, 2012, the grand jury returned a superseding indictment against defendants Sanford, Vano, and Pogue. *See* SI. On January 9, 2012, the parties jointly moved to reschedule the depositions of the material witnesses for February 6-8, 2012, and the Court granted that motion. *See* ECF No. 23; Minute Order dated January 9, 2012.

---

[1] The material witness statute, 18 U.S.C. § 3144, provides, in pertinent part, that "[n]o material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure." The Court noted that while the witnesses asserted hardship due to their absence from their home country, the Philippines, this concern was mitigated by evidence that the witnesses' employment as fishermen routinely requires them to be away from their homes and families for extended periods of time. Indeed, due to their employment, two of the material witnesses have already been away from their families for approximately two years, while the third witness has been away for more than three years. No. 11-mc-580, ECF No. 27 at 2. In addition, while the witnesses' detention has taken them away from their work as fishermen, the material witnesses are staying at a hotel in Washington, D.C., where their room and board is paid for, and they are receiving financial compensation at a rate that exceeds that of their annual salaries as fishermen. The Court denied the motion to compel release of the material witnesses at that time so that their depositions could be taken pursuant to the Federal Rules of Criminal Procedure.

[2] Counsel for Pogue and Vano asked for at least 30 days, noting that the Speedy Trial Act bars a trial less than 30 days from the date on which the defendant first appears through counsel to answer an indictment unless the defendant consents in writing to an earlier trial date. 18 U.S.C. § 3161 (c)(2). See Hearing Tr. (Rough), Jan. 4, 2012 AM, at 9:30 (The parties have not requested formal transcripts from the court reporter. Accordingly, the Court's citations to transcripts are from the court reporter's rough drafts of the proceedings.).

### B. The Superseding Indictment

The superseding indictment alleges seven counts arising from the defendants' alleged violation of the oil waste disposal provisions of APPS during the voyages of the *San Nikunau*. Each count is briefly summarized below.

Count One alleges conspiracy against all defendants in violation of 18 U.S.C. § 371 for "knowingly and willingly" conspiring to "fail to maintain an Oil Record Book for the *F/V San Nikunau* in which all operations involving the transfer of oil and oily waste water, including all overboard discharges of oil-contaminated bilge waste, were fully recorded, and falsely recorded that the Oil Water Separator was used when it was not, in violation of" 33 U.S.C. § 1908(a) and 33 C.F.R. §§ 151.25(a) and 151.25(h). SI ¶ E.2.A. The superseding indictment alleges that Sanford, acting through its employees, operated the vessel knowing that it carried a false Oil Record Book and that the vessel routinely discharged oil wastes illegally from November 25, 2006 to July 15, 2011. *Id.* ¶ E.3. The superseding indictment enumerates 42 overt acts in furtherance of the conspiracy, including: (1) twelve dates in 2006 to 2010 on which the *San Nikunau* ended fishing voyages in Pago Pago, American Samoa, during which voyages defendants Sanford and James Pogue allegedly directed subordinates to discharge bilge waste overboard without using the Oil Water Separator and without recording the discharge in the Oil Record Book, *id.* ¶ E.4.A; (2) three dates in 2008 to 2011 on which the *San Nikunau* ended fishing voyages in Pago Pago, American Samoa, during which voyages defendants Sanford and Rolando Vano directed subordinates to discharge bilge waste overboard without using the Oil Water Separator and without recording the discharge in the Oil Record Book, *id.* ¶ E.4.B; and (3) five voyages with end dates from March 7, 2007 to August 17, 2010 that do not include allegations of the involvement of defendants Vano or Pogue, *id.* ¶ E.4.C. The superseding indictment further alleges that on these twenty dates,

defendant Sanford and the other members of the conspiracy caused the *San Nikunau* to enter the navigable waters, internal waters, and ports of the United States in American Samoa with a knowingly falsified Oil Record Book. *Id.* ¶ E.4.D. Finally, the superseding indictment alleges that on July 15, 2011 two additional overt acts occurred when the First Mate (also known as the "Navigator") of the ship instructed a crewmember to lie to U.S. Coast Guard personnel about the overboard discharges on two separate occasions, once while in the galley of the vessel and once while during a ride to the Coast Guard office. *Id.*

Counts Two and Three against defendants Sanford and James Pogue allege knowing failure to maintain an accurate Oil Record Book in violation of 33 U.S.C. § 1908(a) and falsification of records in violation of 18 U.S.C. § 1519, respectively. Count Three further alleges that during a fishing voyage ending on or about July 9, 2010, Pogue, with the intent to impede and obstruct a Coast Guard investigation, "did knowingly conceal, cover up, falsify, and make a false entry in a record and document, that is, a false, fictitious and misleading Oil Record Book for the *F/V San Nikunau* that concealed the overboard discharge of oil contaminated waste and contained entries falsely stating that required pollution prevention equipment had been used when it had not." SI Count III at ¶ 2.[3]

Counts Four, Five, and Six against defendants Sanford and Rolando Vano allege knowing failure to maintain an accurate Oil Record Book in violation of 33 U.S.C. § 1908(a), falsification of records in violation of 18 U.S.C. § 1519, and obstruction of justice in violation of 18 U.S.C. § 1505. The falsification of records charged in Count Five allegedly occurred during a fishing voyage ending on or about July 14, 2011, when Vano, with the intent to impede and obstruct a Coast Guard investigation, "did knowingly conceal, cover up, falsify, and make a false entry in a record and document, that is, a false, fictitious and misleading Oil Record Book for the *F/V San Nikunau* that

---

[3] July 9, 2010 is also listed as the date of an overt act in Count I. SI ¶ E.4.D.

concealed the overboard discharge of oil contaminated waste and contained entries falsely stating that required pollution prevention equipment had been used when it had not." SI Count V at ¶ 2. The obstruction charge in Count Six allegedly occurred the next day, on July 15, 2011, when an alleged false statement was made to Coast Guard personnel that "oily bilge waste was not directly discharged overboard from the vessel and the Oil Water Separator was being properly used on the vessel." SI Count VI at ¶ 2.

Count Seven against defendant Sanford alleges a violation of 33 U.S.C. § 1907(a) and 1908(a) when, on July 15, 2011, within the navigable waters of the United States in American Samoa, Sanford, through its employees, knowingly discharged machinery space bilge waste overboard without verifying the oil content and without using a functioning Oil Water Separator. SI Count VII at ¶ 2.

### C. Request for Bill of Particulars

Defendant Sanford requested a Bill of Particulars on December 29, 2011. ECF No. 16. Less than one week after Sanford filed that request, on January 5, 2012, the grand jury returned a superseding indictment naming as defendants the alleged co-conspirators Pogue and Vano and containing additional charges and overt acts. ECF No. 22. The government subsequently, on January 9, 2012, filed an opposition to the motion for a bill of particulars, arguing that "the superseding indictment itself is plain and concise and clearly gives Defendant ample information to prepare for depositions and its defense at trial." ECF No. 24 at 2.

Notwithstanding the government's view that the additional information contained in the superseding indictment is sufficient to defeat the request for a bill of particulars, in its reply, Sanford affirmed its request, although it refined and narrowed its original request. ECF No. 34 ("BOP Reply"); Arraignment Motion Hearing Tr. (Rough), Jan. 13, 2012 AM, at 9. Sanford argued that the superseding indictment "fails to identify with sufficient particularity the nature and

7

necessary details of the charges pending against Sanford." BOP Reply at 1. As the Court describes more fully below, Sanford requests "the substance, time, place and date of each allegation set forth in the Superseding Indictment." BOP Reply at 2.

The individual defendants, Vano and Pogue, have joined Sanford's Motion for a Bill of Particulars. *See* Minute Orders dated January 12 and 13, 2012.

The Court held oral argument on the Motion on January 13, 2012. Following oral argument, the Court gave all parties an opportunity to submit supplemental briefing on the Motion and Defendants Sanford and Pogue, as well as the government, have submitted supplemental briefs. ECF Nos. 36-38.

The defendants' Motion for a Bill of Particulars, ECF No. 16, is now before the Court. For the reasons explained below, the defendants' motion is denied.

## II. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 7(f), a court may direct the filing of a bill of particulars. "A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987) (citations omitted). "Yet if the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required." *Id.*; *United States v. Bourdet*, 477 F. Supp. 2d 164, 184 (D.D.C. 2007). "The determination of whether a bill of particulars is necessary rests within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (citations and internal quotation marks omitted).

Defendants are not entitled to a bill of particulars as a matter of right since the test is whether such particulars are "necessary." 1 Charles Alan Wright & Andrew Leipold, Federal

Practice and Procedure: Criminal § 130 (4th ed. 2008). "A bill of particulars is not a discovery tool or a devise for allowing the defense to preview the government's theories or evidence." *United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999); see also *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) (internal citations omitted).

"[U]nlike discovery, a bill of particulars is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation and not to provide the defendant with the fruit of the government's investigation." *United States v. Baker*, No. 8-00075, 2010 U.S. Dist. LEXIS 23656, at *5-6 (M.D. Pa. Mar. 15, 2010) (citation and quotation marks omitted). "The Court must strike a prudent balance between the legitimate interests of the government and those of the defendants." *Ramirez*, 54 F. Supp. 2d at 29 (citation and quotation marks omitted). In other words, a bill of particulars "properly includes clarification of the indictment, not the government's proof of its case." *United States v. Martinez*, 764 F. Supp. 2d 166, 173 (D.D.C. 2011) (citing *Ramirez*, 54 F. Supp. 2d at 29).

"A bill of particulars is . . . designed to limit and define the government's case." *Baker*, 2010 U.S. Dist. LEXIS 23656, at *4. "Thus, the court must balance the defendant's need to know evidentiary-type facts in order to adequately prepare a defense with the government's need to avoid prematurely disclosing evidentiary matters to the extent that it will be unduly confined in presenting its evidence at trial." *Id*. at *4-5. *Compare United States v. Fleet Management Ltd*., No. 07-279, 2008 WL 222325, at *3-4, 6-7 (E.D. Pa. Jan. 28, 2008) (barring government's expert testimony about dates other than those specified in the bill of particulars).

### III. DISCUSSION

After a review of the extensive briefing on this motion, the substance of the defendants' requests, the information supplied on the record by the government, and the applicable law, this Court finds that no bill of particulars is warranted here because the superseding indictment and

other information available to the defendants through discovery provides sufficient detail regarding the nature and the details of the offenses charged to afford the defendants a full and fair opportunity to prepare for and avoid surprise at trial. The Court addresses each Count of the superseding indictment and Sanford's corresponding request for information below.

### A. Particulars Requested by Count

#### i. Count One

Regarding Count One alleging conspiracy, the defendants request information identifying "(1) when the numerous alleged discharges covering a nearly five-year period occurred; (2) where the vessel was located when the alleged discharges occurred; (3) who was involved in the alleged discharges; or, (4) the quantity of oily bilge waste that was allegedly discharged." BOP Reply at 4. These requests are denied. At the outset, "the general rule in conspiracy cases is that the defendant is not entitled to obtain detailed information about the conspiracy in a bill of particulars." *United States v. Diaz*, 303 F. Supp. 2d 84, 89 (D. Conn. 2004).

The specific requests for the location of the vessel when the discharges occurred, the quantity of the oily waste discharged, and the dates of the discharges, are not material to the charge here. As the government notes, "the heart of the allegation is the conspiracy . . . between the Defendants during [the specified] time period to bring the false Oil Record Book into American Samoa while knowing that it was false." See Gov't's Suppl. Opp'n to Def.'s Mot. for a Bill of Particulars, ECF No. 36 ("Gov't Suppl.") at 3. While not required to do so, the government has already provided in its superseding indictment detailed allegations of multiple "overt acts in furtherance of the conspiracy," in the form of specific end dates of fishing voyages during which the defendants allegedly caused the discharge of bilge waste. SI ¶ 4; *see also* Gov't Suppl. at 2-3. As the government indicates, it has not charged defendants with discharging bilge waste "on the high seas." Gov't Suppl. at 4. "Therefore, the exact location of the discharges, or the amount of the

10

discharges are not elements of the offenses charged." *Id*. As such, the detailed list already provided by the government is more than sufficient to provide the defendants notice of the allegations against them and an opportunity to prepare a defense. See *Butler*, 822 F.2d at 1194 (where the government's response had "furnished essentially the information that [the defendant] had requested[, more] specific information about the times and places that [the defendant] participated in the alleged conspiracy was not required by law"); *United States v. Pineda*, No. 02-112-12, 2007 U.S. Dist. LEXIS 8635, *2-5 (D.D.C. Feb. 7, 2007)(court denied request for bill of particulars for the specific dates on which alleged acts and events took place since indictment provided "relative time frames when overt acts occurred" and this was "sufficient precision to ensure that the defendant understands the charges and can prepare his defense"). Moreover, the government has provided the defendants in its supplemental opposition to the motion for a bill of particulars, a summary of anticipated witness testimony making clear that "whenever the F/V San Nikunau was at sea, it constantly generated oily bilge waste that was routinely discharged from the vessel without using the Oil Water Separator." Gov't Suppl. at 2. In other words, "the Defendants have Discovery and know that the discharges during the vessel's voyages were routine and continuous[.]" *Id*. at 4. The government has also indicated that, while of limited relevance to the charges, defendants "can determine the location of the vessel on each day of the voyages because the locations are detailed in the Deck Log that all Defendants have received." *Id*. at 3.

The final request relating to Count One for the identity of persons "involved in the alleged discharges" amounts to a request for the names of alleged co-conspirators. The government in this case is not required to disclose the identities of all members of the conspiracy. *Martinez*, 764 F. Supp. 2d at 173-74 ("The indictment alleges the essential facts, charges the required elements, and bars a second prosecution for the same offense. It need not spell out which co-conspirator committed which conspiratorial act."). "Allowing Defendant a list of all the employees who are

11

envisioned in the allegations of the indictment would come dangerously close to providing Defendant with a list of prospective government witnesses." *Baker*, 2010 U.S. Dist. LEXIS 23656, at *7. *See also Diaz*, 303 F. Supp. 2d at 89 ("[D]efendants in a conspiracy case may not obtain the ". . . 'whens', 'wheres', and 'with whoms'. . ." in a bill of particulars.") (quoting *United States v. Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996)).

The Court is also unconvinced by Sanford's argument that it requires the identities of all crewmembers alleged to have participated in the conspiracy because, as a corporation, it is subject to vicarious liability. First, the Court notes that the superseding indictment details the involvement of Vano and Pogue in the offenses. Second, the government has already provided the accounts of the material witnesses in discovery. Third, the defendants will also have the opportunity to depose the witnesses before trial, a date for which has not yet been set. While this is a precautionary measure, the Court has been repeatedly assured by counsel for the material witnesses that these witnesses will appear in court when required to testify at the trial in this case. See 11-mc-580, ECF No. 27. Indeed, as part of this assurance, counsel has noted that these witnesses are long-tenured employees of Sanford, which has executed a security agreement to forfeit a surety bond in the amount of $1,000,000 if the company fails to exercise good faith to "encourage these officers and crewmembers to cooperate with the United States in carrying out its investigation and in appearing for their scheduled testimony." *See* Agreement on Security. Finally, of any of the parties, Sanford should be mostly keenly aware of the identities of the crewmembers of its vessel. When a ship is in the middle of the sea, there is a finite number of people on board and a finite list of crew members. As the owner of the ship, Sanford is in the best position to know the full list of crewmembers aboard during the periods covered by the government's allegations of conspiracy and the assigned duties of each crewmember. *Butler*, 822 F.2d at 1193 (noting that "if the requested information is available in some other form [apart from the indictment], then a bill of particulars is not required.").

12

### ii. Counts Two, Three, Four, and Five

Regarding Counts Two through Five charging Sanford and Vano or Pogue with violating 33 U.S.C. § 1908(a) and 18 U.S.C. § 1519, for failing to maintain an accurate record book, the defendants request in their bill of particulars "(1) the identity of all person(s) who are alleged to have failed to maintain an accurate Oil Record Book; (2) the time, date, and location of the vessel when the oil record book was allegedly maintained in a false manner (i.e., the dates when alleged discharges were not recorded in the oil record book and the dates when alleged false entries were made in the oil record book for the use of the pollution control equipment); and (3) the time, date, and location of an alleged act that occurred on board the vessel that was allegedly omitted from or falsely entered in the vessel's oil record book." BOP Reply at 5.

The government has provided information responsive to the first request relevant to Counts Two through Five. Specifically, the government stated in the supplemental opposition that "[t]here is no mystery that Defendants Rolando Ong Vano and James Pogue were responsible for maintaining the Oil Record Book on behalf of Defendant Sanford Ltd. because they served as the Chief Engineers of the vessel, and supervised the engineering crewmembers." Gov't Suppl. at 5. On the remaining two requests for specific time, date, and location information related to these counts, the Court finds that the defendants are not entitled to a bill of particulars. Counts Two and Four of the superseding indictment allege that Sanford and Vano or Pogue knowingly failed to maintain an accurate oil record book in violation of 33 U.S.C. § 1908(a) and 33 C.F.R. § 151.25, which require the maintenance of such a book. Counts Three and Five allege that on voyages ending in Pago Pago, American Samoa on July 9, 2010, and July 14, 2011, respectively, Pogue or Vano, acting on behalf of Sanford, made false entries in the oil record book in violation of 18 U.S.C. § 1519. As the government explains, "[t]he Defendants know . . . that the material witnesses

will testify that . . . discharges [of oily bilge waste] occurred multiple times during each of those voyages because the practice was routine." Gov't Suppl. at 5. Furthermore, "[t]he anticipated witness testimony will be that the OWS [Oil Water Separator] was never used during their last voyage, when Vano was the Chief Engineer, and rarely, if ever, used during Pogue's last voyage." *Id*. at 2. Since the oil record book, which the defendants also possess, does not show any entries by Vano or Pogue showing the discharge of oily bilge waste without using the Oil Water Separator, the government argues it can prove Counts Two through Five on the theory that some, if not all, of the entries must therefore be falsified since the ship, in fact, routinely and continuously discharged oily waste without using the Oil Water Separator. Since, however, the ship's voyages occurred over a period of days, the government submits that "the evidence will not, and cannot, pinpoint the exact time, date, and location that each such [oil waste] discharge occurred." *Id*. at 5.

Upon consideration of the relevant statutes and the arguments of counsel, the Court sees no reason why the government should not be permitted to proceed on its proffered theory and no reason why it should be ordered to identify particular dates of discharge given this evidence. The superseding indictment, the government's submissions, and discovery have provided the defendants with sufficient information "to allow the defendant to understand the charges, to prepare a defense, and . . . to be protected against retrial on the same charges." *Mejia*, 448 F.3d at 445 (quoting *Butler*, 822 F.2d at 1193).

In defendant Pogue's separate supplemental brief, ECF No. 38, he argues that Count Three lacks particularity because it alleges he made a false entry in the Oil Record Book during a "voyage ending on or about July 9, 2010," rather than specifying the particular date or the particular false statement. Pogue notes that the Oil Record Book for that voyage, which he has obtained in discovery, contains 29 dated entries, each of which logs four items of information, and thus he contends that he lacks notice of which entries and which particular items of information the

14

government alleges are false. *Id*. at 3-4. This Court disagrees. The Court finds that the superseding indictment and the government's submissions noting the testimony of the material witnesses that the Oil Water Separator was "rarely, if ever" used during the voyage are sufficient to enable Pogue to understand the charges against him and to prepare a defense. See *United States v. Cisneros*, 26 F. Supp. 2d 24, 55-56 (D.D.C. 1998) (denying bill of particulars seeking identification of alleged false statements because "[r]ead as a whole, the Indictment clearly provides enough information to allow [the defendant] to understand the charges against him and prepare to defend himself against those charges.").

### iii. Count Six

Regarding Count Six, the obstruction of justice count against Sanford and Vano alleging false statements to Coast Guard personnel on July 15, 2011, the defendants request "(1) the exact time and location when these alleged false statements to the Coast Guard were made; (2) who from the Coast Guard heard these alleged statements; (3) the actual substance of the allegedly false statements; and, (4) the identity of the crewmembers that allegedly made these false statements to the Coast Guard." BOP Reply at 5. The Court finds that the superseding indictment provides sufficient information for the defendants to understand the nature of this charge. The superseding indictment identifies the substance of the false statement – i.e., that "oily bilge waste was not directly discharged overboard from the vessel and that the Oil Water Separator was being properly used on the vessel." SI Count VI at ¶ 2. The superseding indictment also sufficiently specifies the date and location – i.e., during the vessel inspection of the *San Nikunau* in Pago Pago on July 15, 2011. At least one crewmember involved – namely, Vano – is also identified. SI Count IV. In addition, at the hearing on January 13, 2012, the government agreed to provide defendants with the Coast Guard report describing the details of the July 15, 2011 event and the name of the crewmember(s) referenced in Overt Acts 41 and 42 of the superseding indictment. Gov't Suppl. at

15

1 n.2. These details provide enough information for the defendants to understand this charge and to prepare a defense. See *United States v. Mejia*, 448 F.3d 436, 445-46 (D.C. Cir. 2006) (no bill of particulars where defendant sought information about cooperating witness that was contained in Drug Enforcement Agency reports).

    **iv.    Count Seven**

Regarding Count Seven, which charges Sanford with an unlawful discharge of machinery space bilge waste overboard in the waters of American Samoa on July 15, 2011, in violation of the Act to Prevent Pollution from Ships, the defendants seek "(1) the exact time when the discharge(s) occurred; (2) the quantity allegedly discharged; and (3) the identity of the crewmembers who allegedly discharged oily bilge waste overboard." BOP Reply at 5. With respect to the first and second requests, the superseding indictment specifies the date and location of the discharges. Beyond that information, the request for the exact time of day and the specific quantity of oily bilge waste discharged is only marginally relevant, if at all. Moreover, the government has also stated that the Oil Water Separater was "never used during their last voyage, when Vano was the Chief Engineer, and rarely, if ever, used during Pogue's last voyage." Gov't Suppl. at 2.

The third request for the identities of crewmembers involved in the discharge on July 15, 2011, are generally contained in discovery already provided or on the lists of crewmembers on the vessel in the custody of Sanford. As noted *supra*, the government agreed at the January 13, 2012 hearing to provide to the defendants the Coast Guard report for July 15, 2011 and the name of the crewmember(s) referred to in Overt Acts 41 and 42 of the superseding indictment. Where the government has already provided more information than is required of them at this stage of the proceedings, no further information is needed for the defendants to understand this charge and to prepare a defense.

## B. Defendants' Reliance on *United States v. Fleet Management* is Misplaced

The defendants rely chiefly on a district court case from outside of this Circuit, *United States v. Fleet Management Ltd.*, No. 07-279, 2008 WL 222325 (E.D. Pa. Jan. 28, 2008).[4] The charges in *Fleet Management* also concerned unlawful discharges of oil waste and the failure to maintain an accurate Oil Record Book. In that case, the court ordered the government to produce a bill of particulars identifying the dates of alleged illegal discharges. *Id.* at *5-6. The *Fleet Management* court found that a bill of particulars was appropriate since the defendants had to participate in Rule 15 depositions three weeks after the indictment in that case was filed. *Id.* at *6. Regarding the dates of illegal discharges, the *Fleet Management* court observed that "this is not a case where the exact dates of the alleged offenses can be characterized as inconsequential . . . . To the contrary, the charges in this case revolve around allegations that Defendants failed to record discharges of oil on specific dates in an oil record book." *Id.* at *5. The defendants thus urge the Court to follow *Fleet Management* in ordering a bill of particulars.

This Court declines to follow *Fleet Management* for several reasons. First, the rationale for the decision to require a bill of particulars in *Fleet Management* rested on an apparent concern to protect the defendants from any prejudice resulting from the government's insistence on early Rule 15 depositions three weeks after indictment. *Id.* at *6 ("Here, we ordered the Government to produce a Bill of Particulars, precisely because we wanted to negate any prejudice that might inure to Defendants by virtue of their having to take part in Rule 15 depositions in this complex case just three weeks after the Indictment was filed."). By contrast, here, Rule 15 depositions have been scheduled upon motion of the material witnesses and at a mutually agreeable time that afforded all defendants at least 30 days following indictment. Second, this Court declines to follow the *Fleet*

---

[4] The defendants also rely on an unpublished order from a Magistrate Judge in the Southern District of Alabama. *See United States v. Target Ship Mgmt. PTE. Ltd. et al.*, No. 1:11-cr-368-KD-C (S.D. Ala. Jan. 13, 2012), attached as ECF No. 37-3.

*Management* court in its conclusion that the defendants are entitled to the precise dates of the illegal oil discharges in a bill of particulars. The superseding indictment identifies the date ranges of the discharges by specifying the end dates of the voyages during which the discharges occurred. More fundamentally, however, where the offense charged is failure to maintain an accurate Oil Record Book, rather than the making of any particular discharge, and where there is testimony that the defendants routinely and continuously made illegal discharges, the date and manner of each particular illegal discharge becomes less significant.

Finally, the Court observes that, in *Fleet Management*, the court ultimately excluded *all testimony* from the government's expert regarding alleged discharges that may have occurred on dates other than those originally specified in the bill of particulars. *Id.* at *7. Since the material witnesses' grand jury testimony here indicates that the *San Nikunau* illegally discharged waste as a routine and continuous practice, the Court finds that ordering the government to produce a bill of particulars identifying each date of oil waste discharge would unfairly restrict the government's ability to present its case. Indeed, the government has already admitted that "the evidence will not, and cannot, pinpoint the exact time, date, and location that each such discharge occurred." Gov't Suppl. at 5. Such pinpointed information is neither necessary for the government to prove its case nor necessary for the defendants to understand the charges against them. "Accordingly, because the Court finds that a bill of particulars is not necessary for defendant to understand the charges and prepare a defense, the Court will deny this Motion*." Martinez*, 764 F. Supp. 2d at 174; s*ee also Diaz*, 303 F. Supp. 2d at 89 ("[B]ecause a bill of particulars serves to restrict how the government may present its case at trial, the question is not whether the information sought would be beneficial to the defendant, but whether it is necessary for his defense."); *accord United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010) (district court did not err in denying request for bill of particulars

since "government was not required . . . to provide notice of the intrinsic evidence" of uncharged acts relevant to establishing the charged conspiracy).

## IV. CONCLUSION

For the reasons stated above, the defendants' Motion for a Bill of Particulars is denied. An Order consistent with this Opinion will be entered.

DATED: January 30, 2012  /s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge