# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Case No. 11-cr-352 (BAH)<br>Judge Beryl A. Howell |
| SANFORD, LTD., *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court are motions to dismiss Counts One through Five of the Superseding Indictment filed by defendants Sanford, Ltd. and James Pogue. The defendants are charged in seven counts with violating federal laws when they allegedly discharged oil-contaminated sludge and bilge waste into the ocean. They now move to dismiss Counts One, Two and Four of the Superseding Indictment for failure to state a claim and inadequate notice, ECF No. 71; and to dismiss Counts Three and Five on grounds that these counts are duplicitous. ECF No. 64. The defendants, and Sanford individually, have further moved to dismiss Counts Two, Three, Four, and Five, or to require election of them, arguing, for various reasons, that the Counts are multiplicitous. ECF Nos. 64, 68. For the reasons explained below, all of the defendants' motions are DENIED.

## I.    BACKGROUND[1]

On January 5, 2012, a grand jury returned a Superseding Indictment charging three Defendants – Sanford Ltd. ("Sanford"), a shipping company that owns and operates the fishing

---

[1] The factual circumstances of this case have been set forth in the Court's previous Opinions addressing the defendants' motion for a bill of particulars and motion to depose witnesses. *United States v. Sanford Ltd.*, No. 11-cr-352, 2012 WL 256058 (D.D.C. Jan. 30, 2012); *United States v. Sanford Ltd.*, No. 11-cr-352 (D.D.C filed Apr. 10, 2012) (Memorandum Opinion and Order granting in part the defendants' motion to depose unavailable witnesses), ECF Nos. 96-97.

vessel *F/V San Nikunau*; and two individuals, James Pogue and Rolando Ong Vano, who served at different times as the Chief Engineer of the ship – with violating federal criminal laws when they allegedly discharged oil-contaminated sludge and bilge waste into the ocean and falsified records relating to these discharges.  Superseding Indictment, ECF No. 22.  The investigation that led to these charges arose from a United States Coast Guard inspection of the *F/V San Nikunau* at Pago Pago, American Samoa in July 2011.  The government has charged the defendants in seven counts with:  (1) conspiracy, in violation of 18 U.S.C. § 371;  (2) failure to maintain an accurate oil record book ("ORB") on or about July 9, 2010, in violation of 33 U.S.C. § 1908(a),[2] 18 U.S.C. § 2, and 33 C.F.R. § 151.25; (3) falsification of records relating to a fishing voyage ending on or about July 9, 2010, in violation of 18 U.S.C. § 1519; (4) failure to maintain an accurate ORB on or about July 14, 2011, in violation of 33 U.S.C. § 1908(a), 18 U.S.C. § 2, and 33 C.F.R. § 151.25; (5) falsification of records relating to a fishing voyage ending on or about July 14, 2011, in violation of 18 U.S.C. § 1519; (6) obstruction of justice, in violation of 18 U.S.C. §§ 1505 and 2; and (7) unlawful discharge of oil waste on or about July 15, 2011, in violation of 33 U.S.C. §§ 1907(a) and 1908(a), 18 U.S.C. § 2, and 33 C.F.R. § 151.10(b).

Pursuant to the Court's Scheduling Order, the defendants filed a number of pretrial motions on March 22, 2012, on which the Court heard oral argument on April 20, 2012.[3]  *See* Minute Order dated Feb. 15, 2012.  Following oral argument, for reasons stated on the record,

---

[2] 33 U.S.C. § 1908(a) makes it a Class D felony to knowingly violate the 1973 International Convention for the Prevention of Pollution from Ships and the Protocol of 1978 Relating to the International Convention for the Prevention of Pollution from Ships, collectively known as "MARPOL"; Annex IV to the Antarctic Protocol, and associated regulations.  MARPOL set out a detailed regulatory framework enforceable amongst the signatory states, including the United States, to "specifically target the prevention of oil pollution in the sea." *United States v. Jho*, 534 F.3d 398, 401 (5th Cir. 2008).  Congress implemented the provisions of MARPOL through the Act to Prevent Pollution from Ships (APPS), which is codified at 33 U.S.C. §§ 1901, *et seq.*

[3] Prior to oral argument, on April 17, 2012, defendant Sanford and Pogue's co-defendant, Rolando Vano, pled guilty to Count Four of the Superseding Indictment, which charged him with knowing failure to maintain an accurate ORB for the *F/V San Nikunau* in violation APPS, 33 U.S.C. § 1908(a).

the Court denied six of the defendants' pretrial motions: defendant Sanford's Motion to Obtain Information Regarding the Identity of the Unnamed Co-Conspirators, ECF No. 61; Motion to Dismiss or in the Alternative to Strike as Surplusage the Forfeiture Claim, ECF No. 69; and Motion to Dismiss the Superseding Indictment for Prosecutorial Misconduct, ECF No. 72; defendant Pogue's Motion for Severance, ECF No. 66; and the defendants' Motion to Produce the Legal Instructions Provided to the Grand Jury, ECF No. 62; and Motion to Dismiss APPS Counts, ECF No. 63.

Still pending before the Court are three motions: the defendants' motions to dismiss Counts One, Two and Four, ECF No. 71, and to dismiss Counts Three and Five of the Superseding Indictment, ECF No. 64; and defendant Sanford's Motion to Dismiss Counts Two and Four or to Require Election of One of Them, ECF No. 68.[4] Each of these motions is addressed below.

## II. DEFENDANTS' MOTION TO DISMISS COUNTS ONE, TWO AND FOUR FOR FAILURE TO STATE AN OFFENSE

The defendants have moved to dismiss Counts Two and Four of the Superseding Indictment, arguing that these Counts fail to state an offense, or, in the alternative, that the defendants had inadequate notice of the controlling regulations. ECF No. 71. The defendants further contend that Count One, charging conspiracy, should also be dismissed for the same reasons. *Id.* As explained below, the Court disagrees and the defendants' motion is denied.

### A. Legal Standard

Pursuant to Federal Rule of Criminal Procedure 12(b)(3), "at any time while the case is pending, the court may hear a claim that the indictment . . . fails to invoke the court's jurisdiction

---

[4] Defendant Sanford submitted its Motion to Dismiss Counts Two and Four or to Require Election of One of Them in conjunction with the defendants' Motion to Dismiss Counts Three and Five, and filed both motions in a single docket entry at ECF No. 64. The Clerk of the Court, however, has designated defendant Sanford's Motion to Dismiss Counts Two and Four or to Require Election of One of Them as docket entry number 68 in the ECF system.

or to state an offense." The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *United States v. Bowdin*, 770 F. Supp. 2d. 142, 146 (D.D.C. 2011). When considering a motion to dismiss for failure to state an offense, the court "is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (quoting *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis in original)); *Bowdin*, 770 F. Supp. 2d. at 145-46 ("A motion to dismiss an indictment challenges the adequacy of an Indictment on its face. Thus, the indictment must be viewed as a whole and the allegations must be accepted as true at this stage of the proceedings."). "Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *Sunia*, 643 F. Supp. 2d at 60 (quoting *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001)). The court must "presume the allegations of the indictment to be true, and may not dismiss an indictment on a determination of facts that should have been developed at trial." *Id.* (internal citations and quotation marks omitted).

Federal Rule of Criminal Procedure 7(c)(1) provides that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." The indictment must set forth "the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Pickett*, 353 F.3d 62, 67 (D.C. Cir. 2004) (quoting *Russell v. United States*, 369 U.S. 749, 763 (1962)). A valid indictment must therefore: "(1) allege the essential facts constituting the offense, (2) allege each element of the offense, so that fair notice is provided, and (3) be

sufficiently distinctive that a verdict will bar a second prosecution for the same offense." *United States v. Martinez*, 764 F. Supp. 2d 166, 170 (D.D.C. 2011) (quotations and citations omitted).

**B. The Defendants' Motion to Dismiss Counts Two and Four of the Superseding Indictment for Failure to State a Claim is Denied**

Count Two of the Superseding Indictment charges defendants Sanford and Pogue with falsification of records, in violation of 33 U.S.C. § 1908(a), relating to a fishing voyage ending on July 9, 2010; and Count Four charges defendants Sanford and Vano with a violation of the same law relating to a fishing voyage ending on July 14, 2011. Both of these counts allege, in relevant part, that the defendants:

> maintained an Oil Record Book that (1) failed to disclose overboard discharges of oily bilge waste without the use of a properly functioning Oil Water Separator and oil monitoring equipment and falsely stated the Oil Water Separator was used when in fact it was not; and (2) failed to account for internal transfers of oily bilge waste from machinery spaces to other areas of the ship [in violation of 33 U.S.C. § 1908(a), 18 U.S.C. §2, and 33 C.F.R. § 151.25].

Superseding Indictment, ECF No. 22, at 13, 15.

The defendants contend that Counts Two and Four should be dismissed for three reasons. First, the defendants contend that Counts Two and Four fail to allege that the controlling regulation, 33 C.F.R. § 151.25, "impose[s] a recordmaking duty which the defendants failed to carry out." Defs.' Mot. Dismiss Counts Two and Four, ECF No. 71, at 5. According to the defendants, § 151.25 imposes "the duty to make an ORB entry [] only [for] waste accumulated in *machinery spaces*" and "[t]he omission of the limiting language of the regulation [from Counts Two and Four] is a fatal defect." *Id.* at 6 (emphasis added); *id.* at 9 ("Counts Two and Four do not allege that the discharges fell within the limiting element of the regulation, and as a result, Counts Two and Four should be dismissed."). Second, the defendants contend that the Superseding Indictment charges them with failing to account for "internal transfers" of oily bilge waste, for which the regulation does not impose a recordation requirement. *Id.* at 9-10. Finally,

the defendants contend that the term "machinery spaces" in the controlling regulation, 33 C.F.R.

§ 151.25(d)(4), is undefined and ambiguous, which warrants dismissal of Counts Two and Four

because the defendants did not have constitutionally sufficient notice of the conduct proscribed

or required under the regulation. *Id.* at 10-11. These challenges to the Superseding Indictment

are addressed *seriatim* below.

>    1. *Failure to Reference "Machinery Spaces" in Paragraph Two of Counts Two and Four Does Not Render the Counts Defective*

The defendants contend that Counts Two and Four must be dismissed for failure to state

an offense because they do not contain the requisite allegation that the defendants failed to

record discharge of bilge waste accumulated in "machinery spaces." The defendants argue that

they are under no duty to record discharges of bilge waste that has accumulated in locations other

than "machinery spaces." *Id.* at 6. Although the defendants are correct that paragraph two of

Counts Two and Four does not use the term "machinery spaces" in alleging that the defendants

"failed to disclose overboard discharges of oily bilge waste without the use of a properly

functioning Oil Water Separator . . . and falsely stated the Oil Water Separator was used when in

fact it was not." Superseding Indictment, ECF No. 22, at 13, 15. The omission in this paragraph

of the term "machinery spaces" does not, however, render Counts Two and Four invalid.

An indictment is valid if it sets out all elements of the offense and sufficiently apprises

the defendants of the charges against them. *Pickett*, 353 F.3d at 67. As the government notes,

Counts Two and Four sufficiently allege the criminal charge for which the government seeks to

hold the defendants liable, namely, failure to maintain an accurate ORB in violation of 33 U.S.C.

§ 1908(a). Counts Two and Four charge that the defendants "(1) knowingly, (2) violated a

regulation promulgated pursuant to APPS and MARPOL, that is, they failed to (accurately)

maintain an Oil Record Book for the *F/V San Nikunau*, as required pursuant to 33 C.F.R.

151.25." Gov't Opp'n Mot. Dismiss Counts Two and Four, ECF No. 95, at 5. On its face, the

Superseding Indictment contains the requisite elements of the charged offenses and is therefore

not deficient. Indeed, contrary to the defendants' argument that Counts Two and Four are

lacking, these counts supplement the barebones of the requisite elements to inform the

defendants of additional details of the charges against them. The indictment describes the type

of waste that was the subject of the inaccurate reporting, i.e., 'oily bilge waste,' and the nature of

the misrepresentations that were made, including inaccuracies in the ORB involving the failure

to record discharges without the use of a working Oil Water Separator. Superseding Indictment,

ECF No. 22, at 12-13, 15.

Moreover, the information about the charges in Counts Two and Four is further

supplemented by incorporation of Part D of the Superseding Indictment, which sets forth the

legal and regulatory framework underlying the charged offenses. Both Counts Two and Four

expressly state in paragraph one that "Sections A through D of this Indictment are specifically

incorporated and re-alleged herein." *Id.* at 12 (Count Two, ¶ 1), 15 (Count Four, ¶ 1). Section D

describes oily bilge waste in detail, *id.* Part D, ¶ 2, and states that "APPS regulations require that

[ships subject to the regulation] maintain a record known as an Oil Record Book in which all

disposals of oil residue and the discharge overboard or disposal otherwise of bilge water and

sludge *that have accumulated in the machinery spaces* must be recorded." *Id.* Part D, ¶ 3

(emphasis added). Thus, these two challenged counts include a description of the conduct

required under the controlling regulation and sufficiently inform the defendants of the

regulation's recordation requirement. The omission of the term "machinery spaces" from

paragraph two of Counts Two and Four is therefore of no consequence. *See United States v.*

*Palumbo Bros., Inc.*, 145 F.3d 850, 860 (7th Cir. 1998) ("In reviewing the sufficiency of an

indictment, a court should consider each challenged count as a whole and should refrain from reading it in a hypertechnical manner.") (internal quotation marks omitted).

The defendants rely on *United States v. Safavian*, 528 F.3d 957 (D.C. Cir. 2008), in support of their argument that Counts Two and Four must be dismissed because the "failure to disclose" allegation is not predicated upon a legal duty to disclose. Defs.' Reply in Supp. Mot. Dismiss Counts Two and Four, ECF No. 113, at 3. In *Safavian*, the defendant was charged, *inter alia*, with violation of 18 U.S.C. § 1001(a)(1), which makes it a crime when one "knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact." 528 F.3d at 963. The D.C. Circuit reversed the conviction after concluding that the defendant was charged with concealing information from an agency ethics office regarding an overseas golfing trip with a lobbyist that he had "no legal duty to disclose." *Id.* at 965. This case is inapposite. The government argued in *Safavian* that the defendant's duty to disclose information was imposed upon him not by statute or regulation, but by "standards of conduct for government employees," which provided fourteen "general principles" of behavior. *Id.* at 964. The Circuit concluded that these standards were "vague" and that the "ethical principles" embodied in them did not impose a clear duty on an executive employee to disclose information. *Id.* at 964-65. Here, the defendants' duty to record entries in the ORB is prescribed by specific Coast Guard regulations. There is no question that the defendants were under a legal duty to record accurate information in the ORB, and that this underlying duty is set forth specifically in Part D, which is incorporated in Counts Two and Four.

The defendants additionally rely on *United States v. Pickett*, 353 F.3d 62 (D.C. Cir. 2004), *United States v. San Diego Gas and Elec. Co.*, No. 06-cr-065, 2006 U.S. Dist. LEXIS 84856 (S.D. Cal. Nov. 21, 2006) and *United States v. Sunia*, 643 F. Supp. 2d 51 (D.D.C. 2009),

in support of their argument that Counts Two and Four should be dismissed, but reliance on these cases is also misplaced. In each of those cases, the government failed to allege an element essential to the offense for which the defendants were charged. In *Pickett*, the defendant was a Capitol Hill Police Officer who appealed from a jury verdict finding him guilty of making a false statement in violation of 18 U.S.C. § 1001. The D.C. Circuit reversed his conviction, holding that the indictment failed to allege that the defendant's false statement was in connection with a Congressional investigation or review, which was an essential element of the offense. *Pickett*, 353 F.3d at 67; 18 U.S.C. § 1001(c)(2). The Court concluded that, absent any allegation regarding the defendant's conduct falling within the category of conduct proscribed by the statute, the indictment did not state an offense.

In the remaining cases, *San Diego Gas* and *Sunia*, relied upon by the defendants, the government similarly failed to allege in the indictment a required element of the charged offense. In *San Diego Gas* the government failed to allege that the material at issue contained more than one percent of asbestos, as required by the statute. *San Diego Gas and Elec. Co.*, 2006 U.S. Dist. LEXIS 84856, at \*30-39. In *Sunia*, the government failed to appropriately allege the *mens rea* requirement of the offense and the court dismissed the charge because there were "no allegations giving rise to an inference that the defendants knew they were obstructing [an agency] proceeding as required to allege an offense under [18 U.S.C. ] § 1505." *Sunia*, 643 F. Supp. 2d at 80.

The situation before this Court is distinguishable from *Pickett*, *San Diego Gas*, and *Sunia*. In this case, the Superseding Indictment alleges that the defendants falsified records relating to the discharge of bilge waste, which, as described in Section D, accumulated in machinery spaces. The Superseding Indictment includes all the elements of the charged offenses, namely that the

defendants knowingly violated a regulation promulgated under APPS. As the government appropriately notes, "[i]n the present case, by alleging that the defendants had knowingly failed to maintain an accurate oil record book as required under the regulations, the government has already provided information that is essential to the offense." Gov't Opp'n Mot. Dismiss Counts Two and Four, ECF No. 95, at 9. The Superseding Indictment further provides a description of oily bilge waste, and notes that the requirement to record under 33 C.F.R. § 151.25(d)(4) is limited to waste that has "accumulated in the machinery spaces." Superseding Indictment, ECF No. 22, Part D, ¶¶ 2-3. Thus, the Superseding Indictment properly alleges violations of 33 U.S.C. § 1908(a) in Counts Two and Four, and provides the defendants with sufficient information to understand the charges against them, prepare a defense, and be protected against retrial on the same charges.[5]

2. *Counts Two and Four Do Not Fail To State an Offense Regarding "Internal Transfers" of Bilge Waste*

The defendants contend that Counts Two and Four should be dismissed because these Counts allege, in part, that the defendants "failed to account for internal transfers of oily bilge waste from machinery spaces to other areas of the ship," but the controlling regulation, 33 C.F.R. § 151.25, imposes no requirement to account for such "internal transfers of oily bilge waste." Defs.' Mot. Dismiss Counts Two and Four, ECF No. 71, at 9-10. According to the defendants, the Superseding Indictment therefore "alleges a failure to do something that the charged

_____

[5] In their reply brief, the defendants raise for the first time the argument that Counts Two and Four do not provide sufficient facts and notice to allege violations of certain subparts of 33 C.F.R. § 151.25, namely, § 151.25(d)(3), which pertains to discharge of oil residue, and 33 C.F.R. § 151.25(g), which pertains to emergency or accidental discharge of waste. Defs.' Reply in Supp. Mot. Dismiss Counts Two and Four, ECF No. 113, at 12-18. The Court provided the government an opportunity to supplement the arguments made in its opposition brief and respond to this argument at oral argument, but the government relied only on its brief. The Court concludes that the Superseding Indictment sufficiently alleges a failure to maintain an accurate ORB in violation of 33 U.S.C. § 1908(a). To the extent that the defendants are arguing that the government has been playing 'hide-the-ball' regarding which subpart of §151.25 are alleged to have been violated, the Court disagrees. Part D of the Superseding Indictment specifically references § 151.25 (d), in its entirety, and subpart (g). Superseding Indictment, ECF No. 22, Part D, ¶ 3.

regulation does not require them to do, and for that reason, it fails to state an offense." *Id*. at 10. The Court concludes that this argument is erroneous.

Section 151.25(d)(4) requires entries "be made in the Oil Record Book on each occasion . . . whenever . . . the following [takes] place . . .[d]ischarge overboard or disposal otherwise of bilge water that has accumulated in machinery spaces." 33 C.F.R. § 151.25(d)(4). The government argues that the term "disposal otherwise" necessarily includes the internal transfer of bilge waste from machinery spaces to other parts of the ship. Gov't Opp'n Mot. Dismiss Counts Two and Four, ECF No. 95, at 10. Although the term "disposal" is not defined in the regulation, the government contends that "it is axiomatic that 'disposal' of 'oily bilge waste' necessarily begins with its transfer from the bilge to a different part of the ship, either for discharge or for storage, which, in the context of a ship at sea with no shore location to off-load the waste, would constitute temporary disposal." *Id*.

The defendants disagree. They argue that the term "internal transfer" is referenced only in another subpart of the regulation, § 151.25(e)(2), which requires oil tankers to make ORB entries for "internal transfer of oil cargo during voyage." The defendants contend that omission of the reference to "internal transfers" in subpart (d) "creates the presumption" that there is no recordation requirement for internal transfers of bilge waste for ships subject to subpart (d). Defs.' Reply in Supp. Mot. Dismiss Counts Two and Four, ECF No. 113, at 5. The defendants further argue that "in context it is clear that 'disposal otherwise' means transfer to a reception facility" because "[d]isposal is clearly used by Coast Guard regulations to mean removing material from the ship, and not, . . . moving it within the ship." *Id.* at 5-6. These arguments are not persuasive and the defendants' hyper-technical parsing of the language of the regulation is unhelpful.

First, the defendants' argument is essentially that directives to record an "internal transfer" provided in one part of the regulation must be provided in identical language in other parts of the regulation. Yet, this argument ignores that different parts of the regulation have different scopes of coverage. Specifically, subpart (e) applies only to oil tankers and the reference to "internal transfer" in subpart (e)(2) pertains to oil cargo, which, unlike bilge waste, is a valuable commodity. Thus, the recordation requirement for movement of this valuable oil cargo within a ship is appropriately described as an "internal transfer" since such cargo would not be subject to "discharge overboard or disposal otherwise," the term used to describe the recordation requirement for "bilge water that has accumulated in machinery spaces." While the term "internal transfer" presumably could have been used to describe the recordation requirement for movement of oil contaminated bilge water within a ship, use of the different term of "disposal otherwise" is consistent with the fact that such bilge water is not valuable cargo and certainly does not compel the conclusion urged by the defendants that no recordation requirement applies to the movement of such bilge water within the ship. At the same time, use of the term "internal transfer" in subpart (e)(2) does not preclude the government from using the same phrase in a descriptive fashion in the Superseding Indictment to refer to "disposal otherwise" of bilge waste.

Second, the logical reading of subpart (d) supports, rather than refutes, the government's contention that "disposal otherwise" references internal transfers of bilge waste from machinery spaces to other parts of the ship. The regulation creates a recording requirement for "discharge overboard or disposal otherwise" of such waste. "Disposal otherwise" must mean removal of bilge waste from machinery spaces to other parts of the ship, before it is "discharged overboard" and removed from the ship. If "disposal otherwise" did not mean internal transfers, the inclusion

of this language would serve no purpose in the regulation. Consequently, when read in context, "disposal otherwise" of bilge waste accumulated in machinery spaces can only be interpreted as a reference to "internal transfers" of bilge waste from machinery spaces to other parts of the ship for later discharge overboard. The defendants' contention that there is no recording requirement for internal transfers of bilge waste accumulated from machinery spaces under 33 C.F.R. § 151.25(d)(4) is therefore wrong.

The defendants assert that if Section 151.25(d)(4) does impose a recordation requirement for internal transfers of bilge waste, Counts Two and Four must nonetheless be dismissed because the regulation was unclear and did not provide the defendants with fair notice of the required conduct. The Court is not persuaded. "Due process requires that laws give people of ordinary intelligence fair notice of what is prohibited." *Brown v. Entm't Merchants Ass'n*, 131 S.Ct. 2729, 2743 (2011). "[I]n the absence of notice – for example, where the regulation is not sufficiently clear to warn a party about what is expected of it – an agency may not deprive a party of property by imposing civil or criminal liability." *Trinity Broad. of Florida, Inc. v. FCC*, 211 F.3d 618, 628 (D.C. Cir. 2000) (quoting *General Elec. Co. v. EPA*, 53 F.3d 1324, 1328-29 (D.C. Cir. 1995)). As stated above, the natural, commonsense reading of the regulation implies that all disposal of bilge waste from machinery spaces, whether the disposal is overboard or "otherwise" to other parts of the ship, must be recorded in the ORB. Given that a person of "ordinary intelligence" would have fair notice of the conduct proscribed and required under the regulation through a straightforward reading of the regulation, the defendants' argument that the Fifth Amendment bars prosecution of such conduct is unavailing.

3.  *The Absence of a Definition for "Machinery Spaces" Does Not Warrant Dismissal of Counts Two and Four*

The defendants next argue that Counts Two and Four should be dismissed because 33 C.F.R. § 151.25 requires the defendants to record in the ORB discharges of bilge waste from machinery spaces, but the regulation does not define "machinery spaces."  According to the defendants, "[t]he absence of a definition matters" because they differ with the government on "what definition might be applied."  Defs.' Reply in Supp. Mot. Dismiss Counts Two and Four, ECF No. 113, at 10.  As a result, according to the defendants, Counts Two and Four should be dismissed for inadequate notice of the proscribed conduct.  Ironically, the defendants' argument proves that the term "machinery spaces" may cover multiple spaces on a ship.

Although the defendants expend much ink attempting to parse and draw confusion about the parts of a ship covered by the term "machinery spaces," its ordinary, common sense meaning is unambiguous.  Indeed, the Court agrees with the government that the defendants' contention that they do not understand how "machinery spaces" is used in the regulation and the Superseding Indictment is "curious" considering that "they are professional mariners and a maritime oriented organization."  Gov't Opp'n Mot. Dismiss Counts Two and Four, ECF No. 95, at 11.  The defendants cite to the term's varying use in other Coast Guard regulations and contend that 'machinery spaces' refers to different parts of a ship.  For example, the defendants point to a Coast Guard Commandant Instruction regarding "Machinery Space Fire-Fighting Doctrine for Class Bravo Fires," which defines machinery space as "A main machinery or auxiliary machinery space which contains any of the following: installed firefighting systems, oil fired boilers, internal combustion engines, gas turbines, or fuel transfer equipment."  U.S. Coast Guard Commandant Instruction M9555.1B (Nov. 2009) *available at* http://www.uscg.mil /directives/cim/9000-9999/CIM _9555_1B.pdf.  The defendants contend this definition is "far

more limited than the one proposed by the government."  Defs.' Reply in Supp. Mot. Dismiss Counts Two and Four, ECF No. 113, at 11.[6]

　While homogenization by the Coast Guard of the terminology used in their regulations would be helpful, a common sense understanding of the term's use in the context of the 33 C.F.R. § 151.25 and the Superseding Indictment is not confusing: 'machinery spaces' as used in the regulation means spaces on a ship containing machines that use oil and are capable of generating oil waste.  Even if the term 'machinery spaces' is unclear to those not familiar with maritime vessels, which it is not, "the crew of any commercial vessel is intimately familiar with the operation of the vessel, including the location of any and all machinery spaces."  Gov't Opp'n Mot. Dismiss Counts Two and Four, ECF No. 95, at 12.

　In an effort to re-direct the focus on the meaning of "machinery spaces" in the context of the MARPOL and APPS, the defendants turn to "Webster's Dictionary."  They state that "Webster's defines 'machinery space' as, 'A room (as on a ship) in which the engine is located.'"  Defs.' Mot. Dismiss Counts Two and Four, ECF No. 71, at 12.  Relying on this definition, the defendants argue that if the Court were to give the term its "'plain meaning[,]' [t]hat too should lead to dismissal, for of the compartments about which the grand jury heard, only the engine room falls within the plain meaning of the term machinery space."  *Id*.  This argument falls flat on its face.

　The defendants represent that Webster's dictionary defines "machinery space," but it does not.  There is no definition for "machinery space" in Webster's dictionary, or in any other commonly used dictionary.  The definition that the defendants provide to the Court is actually

---

[6] The defendants also reference a "design safety regulation," 46 C.F.R. § 58-25.40, which states that the "steering-gear compartment" must be separate from any "machinery space." The defendants note, however, that the grand jury was "told of discharges from a number of places [including] the steering gear compartment."  Defs.' Reply in Supp. Mot. Dismiss Counts Two and Four, ECF No. 113, at 11.  The Court is unclear what to make of this argument or its probative value.

the definition for "engine room," which, needless to say, is not the language used in the regulation.  Indeed, the defendants' citation for the definition clearly references the term defined as "engine room."  *Id.* (citing http://www.websters-dictionary-online.com/ definitions/engine%20room?cx=partner-pub-0939450753529744%3Av0qd01-tdlq&cof =FORID%3A9&ie=UTF-8&q=engine%20room &sa=Search#906 (last visited 3-12-12)).

In interpreting "machinery spaces," the Court must be cognizant of the context and purpose of the overarching regulatory scheme in which the term is used.  The Coast Guard regulations at issue in this case implement two international treaties that aim "to achieve the complete elimination of international pollution of the marine environment by oil and other harmful substances, and consequently address how oceangoing vessels are to dispose of wastes generated onboard."  *United States v. Ionia Mgmt. S.A.*, 555 F.3d 303, 306 (2d Cir. 2009) (internal quotation marks omitted).  The purpose of 33 C.F.R. § 151.25 is to prevent vessels from discharging into the ocean oil tainted waste generated from machinery aboard a ship.  This belies the conclusion that the regulation should be limited only to machinery found in a single, specific area.  As the government notes, "as a stark matter of reality[] commercial vessels have several machinery spaces" which is why the regulation uses "the term 'machinery spaces' and not 'machinery space' or 'engineroom.'"[7]  Gov't Opp'n Mot. Dismiss Counts Two and Four, ECF No. 95, at 11; 33 C.F.R. § 151.25(d)(4).

---

[7] In further support of this argument, the government states that MARPOL's sister statute, the International Convention for the Safety of Life at Sea, 1974, as amended, (SOLAS), defines 'machinery spaces' as:

> Machinery spaces are machinery spaces of category A and other spaces containing propulsion machinery, boilers, oil fuel units, steam and internal  combustion engines, generators and major electrical machinery, oil filling stations, refrigerating, stabilizing, ventilation and air conditioning machinery, and similar spaces, and trunks to such spaces.

SOLAS, Regulation 3, CHAPTER II-2.  This definition comports with the government's position that 'machinery spaces' is not limited only to the engine room of a vessel.  Gov't Opp'n Mot. Dismiss Counts Two and Four, ECF No. 95, at 13.

This interpretation is not only logical, but supported by other Coast Guard regulations that similarly define "machinery space" more broadly than the "engine room." For example, 46 C.F.R. § 30.10-42, provides:

> The term machinery space means any space that contains machinery and related equipment including Category A machinery spaces, propelling machinery, boilers, oil fuel units, steam and internal combustion engines, generators and centralized electrical machinery, oil filling stations, refrigeration, stabilizing, ventilation, and air conditioning machinery, and similar spaces and trunks to such spaces.

Additionally, 46 C.F.R. § 72.05-5 states that machinery spaces include:

> (1) Main machinery spaces, including trunks and casings, alleyways, gratings, and stairways, part of and for the exclusive use of these spaces, auxiliary machinery spaces containing internal combustion machinery or other oil burning, heating, or pumping units, and fuel oil filling stations. []
> (2) Auxiliary machinery spaces containing only pumps, tanks, electrical machinery, ventilation or air conditioning equipment, resistors, steering machinery, stabilizer machinery, etc. []

46 C.F.R. § 72.05-5(d). Given the logical interpretation of "machinery spaces," which is supported by other maritime regulations, the defendants' contention that there was an error in the grand jury process because jurors heard evidence that was not limited to a specific "engine room" is without merit.

The defendants further argue that "[t]he Coast Guard has the responsibility to define terms, especially when criminal liability may turn on the definition. Where there are two or more plausible definitions, the indictment must fail, for failure to provide fair notice of conduct which is required, on pain of criminal punishment." Defs.' Reply in Supp. Mot. Dismiss Counts Two and Four, ECF No. 113, at 12. As explained above, here there are not two or more plausible definitions of 'machinery spaces' as used in the regulation and Superseding Indictment. The term is clear on first reading when given its logical, commonsense interpretation, which the Court will do. Counts Two and Four provide persons of ordinary intelligence a reasonable

opportunity to understand the charges against them; and that is all that is required.  *See Brown v. Entm't Merchants Ass'n*, 131 S.Ct. at 2743.

### C.  Count One Will Not be Dismissed

As explained above, the defendants' request to dismiss Counts Two and Four for failure to state a claim is denied.  The defendants argue that Count One, charging the defendants with conspiracy, should be dismissed because "the object of the conspiracy is stated in the same way as the substantive charges in Counts Two and Four" and therefore "suffers from the same legal deficiencies."  Defs.' Mot. Dismiss Counts Two and Four, ECF No. 71, at 13.  Counts Two and Four are valid and sufficiently state offenses against the defendants.  Accordingly, the defendants' request to dismiss Count One is denied.

### III.  DEFENDANTS' MOTION TO DISMISS COUNTS THREE AND FIVE AS DUPLICITOUS

The defendants have moved to dismiss Counts Three and Five, arguing that these counts are defective for duplicity.  ECF No. 64.  They contend that Counts Three and Five are duplicitous in two ways:  first, because each count charges two units of prosecution under § 1519; and, second, because the "make a false entry" prong of those counts is duplicitous in itself.  The Court will address each of these arguments individually below.

### A.  Duplicitous Counts in an Indictment

"'Duplicity' is the joining in a single count of two or more distinct and separate offenses."  *United States v. Klat*, 156 F.3d 1258, 1266 (D.C. Cir. 1998); *United States v. Quinn*, 401 F. Supp. 2d 80, 103 (D.D.C. 2005).  The problem with a duplicitous count is that there is a "danger that a conviction [may be] produced by a verdict that may not have been unanimous as to any one of the crimes charged."  *United States v. Sunia*, 643 F. Supp. 2d 51, 71 (D.D.C. 2009).  The prohibition against duplicity additionally seeks to prevent double jeopardy, and ensure that

the defendant has adequate notice of the charged crimes, and that the Court has a basis for appropriate sentencing. *Id.* ("[T]he purposes of the prohibition against duplicity [] include (1) the prevention of double jeopardy, (2) an assurance of adequate notice to the defendant, (3) the provision of a basis for appropriate sentencing, and (4) the danger that a conviction was produced by a verdict that may not have been unanimous as to any one of the crimes charged," quoting *United States v. Bruce*, 89 F.3d 886, 890 (D.C. Cir. 1996)). If these concerns are not implicated, however, "separate acts united by a common scheme or pattern may be charged together." *Id.*; *Klat*, 156 F.3d at 1266 ("Several acts may be charged in a single count," however, "if the acts represent a single, continuing scheme that occurred within a short period of time and that involved the same defendant.").

While duplicity may render a particular count defective, the rule about duplicity is a "pleading rule[], the violation of which is not fatal to an Indictment." *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981); *United States v. Place*, 757 F. Supp. 2d 60, 61 (D. Mass. 2010) (same); *Quinn*, 401 F. Supp. 2d at 104 n.24 ("[E]ven if the Court were to conclude that the indictment was impermissibly duplicitous, such a conclusion would not compel dismissal of the charges."). When presented with a duplicitous count, the proper remedy is for the Court either to give a unanimity instruction or to require the government to elect a theory of prosecution. *See Robinson*, 651 F.2d at 1194 ("[A] duplicitous or multiplicitous indictment is remediable by the court's instruction to the jury particularizing the distinct offense charged in each count in the indictment."); *Place*, 757 F. Supp. 2d at 61.

### B. Counts Three and Five Are Not Duplicitous Even If 18 U.S.C. § 1519 Contains Two Units of Prosecution

Counts Three and Five of the Superseding Indictment each charge a violation of 18 U.S.C. § 1519. Count Three alleges, in pertinent part, that during a fishing voyage that ended on

about July 9, 2010, the defendants Sanford and Pogue "did knowingly conceal, cover up, and falsify, and make a false entry in . . . [the] Oil Record Book . . . that concealed the overboard discharge of oil contaminated waste and contained entries falsely stating that required pollution prevention equipment had been used when it had not."  Superseding Indictment, ECF No. 22, at 14.  Count Five alleges that defendant Sanford committed the same violation in the same manner during a fishing voyage that ended on about July 14, 2011.  *Id.* at 16.  Section 1519 states, in relevant part:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . shall be fined under this title, imprisoned not more than 20 years, or both.

The defendants argue that § 1519 contains two units of prosecution, "one proscribing the making of a 'false entry in a record and document,' and one penalizing a person who 'alters, destroys, mutilates, conceals, covers up, [or] falsifies . . . any record, document, or tangible object.'" Defs.' Mot. Dismiss Counts Three and Five, ECF No. 64, at 6-7.  According to the defendants, Counts Three and Five in the Superseding Indictment combine both units of prosecution – false entry and falsification – in each count and thus renders these counts duplicitous.

The defendants acknowledge that the D.C. Circuit has not addressed whether § 1519 contains two units of prosecution, but state that "[t]hree other Courts of Appeals have determined that the statute has two sets of elements."  *Id.* at 6.  In support of this statement, the defendants rely on *United States v. Moyer*, 674 F.3d 192 (3d Cir. 2012), *United States v. Schmeltz*, 667 F.3d 685 (6th Cir. 2011), and *United States v. Hunt*, 526 F.3d 739 (11th Cir. 2008).  None of these cases, however, explicitly holds that § 1519 contains two units of prosecution, let alone

addresses the defendants' argument that false entry and falsification constitute separate offenses under the same statute.

In *Moyer* and *Schmeltz*, the Third and Sixth Circuits, respectively, rejected the contention that § 1519 requires the government to allege in a separate count each false entry that was made in the same document. *Moyer*, 674 F.3d at 204; *Schmeltz*, 667 F.3d at 688. After reviewing the statutory language and the congressional intent, the courts concluded that "[t]he 'falsifies' clause of § 1519 was . . . intended to punish the falsification of a document, rather than specific statements or omissions within a document. Accordingly, [the defendant] could violate § 1519 once—and no more than once—by falsifying [a single] . . . report with [] omissions." *Schmeltz*, 667 F.3d at 688; *see also Moyer*, 674 F.3d at 204 ("We agree with [*Schmeltz*] and conclude that the statute does not require the government to charge separate counts for each false entry in a document."). These courts did not address whether § 1519 contained another unit of prosecution for false entry.

In *Hunt*, the Eleventh Circuit rejected the defendant's contention that his conviction for violation of § 1519 should be overturned because he did not have fair notice that his conduct was criminal. 526 F.3d at 744. Upon review of the statutory language, the court stated that "[n]othing [] suggests the statute is, in the context before us, vague. This statute rather plainly criminalizes the conduct of an individual who (1) knowingly (2) makes a false entry in a record or document (3) with intent to impede or influence a federal investigation." *Id.* at 743.

The defendants argue that *Schmeltz*, *Moyer*, and *Hunt*, "recognized that there are two different clauses establishing violations of § 1519. Both require that the defendant act knowingly, and with intent to impede. The difference is in the element defining the *actus reus*. One requires proof of a false entry (*Hunt*) and the other of a falsified document (*Schmeltz* and

*Moyer*).” Defs.’ Mot. Dismiss Counts Three and Five, ECF No. 64, at 10. Assuming, *arguendo*, that this were true, the Court need not resolve whether there are in fact two units of prosecution in § 1519 because even if there were and both were alleged in Counts Three and Five, the Counts are nonetheless valid.

“[I]t is well established that two or more acts, each of which would constitute an offense standing alone and which therefore could be charged as separate counts of an indictment, may instead be charged in a single count if those acts could be characterized as part of a single, continuing scheme.” *United States v. Shorter*, 809 F.2d 54, 56 (D.C. Cir. 1987), *abrogated on other grounds by Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993); *see also Klat*, 156 F.3d at 1266 (“[S]everal acts may be charged in a single count if the acts represent a single, continuing scheme that occurred within a short period of time and that involved the same defendant.”). As other courts have noted, “[o]bstruction of justice, in its various statutory forms, may be charged by stating a continuous course of conduct or by stating in separate counts specific identified events occurring over a period of time.” *United States v. North*, 708 F. Supp. 372, 374 (D.D.C. 1988).

In this case, the Court agrees with the government that Counts Three and Five charge multiple ways of violating the statute by a number of means in an ongoing scheme, which is permissible. The defendants are alleged to have engaged in routine and repetitive illegal discharges of bilge waste during fishing voyages that ended in American Samoa. The Superseding Indictment charges the defendants with making false entries in the ORB, which was part of an ongoing scheme to conceal their illegal acts. Given this continuing course of conduct, the government may properly charge repeated false entries in the same document in a single count. *Cf. United States v. Target Ship Mgmt. PTe, Ltd.*, No. 11-cv-368, 2012 WL 1392083, at

*2-4 (S.D. Ala. Apr. 20, 2012) (concluding that a count charging violation of 18 U.S.C. § 1519 relating to violation of APPS and MARPOL was duplicitous because the count alleged three different types of obstruction conduct, including that the defendant "created and used a false [ORB]," "directed lower level crewmembers to conceal the smooth sounding log," and "directed an Oiler to make an entry to the smooth sounding log to cover up and conceal a discharge," and thus "charges three separate and distinct offenses requiring proof of dissimilar facts.").

The defendants argue that if the government is allowed to proceed with allegedly duplicitous counts, they will be prejudiced in four ways, it would (1) be difficult to determine whether a conviction rests on only one set of elements or both; (2) deprive them of a right to a unanimous jury; (3) deprive them of their Sixth Amendment right to knowledge of the charges against them; and (4) compromise their Fifth Amendment right to be tried only upon charges brought by the grand jury because it would be "impossible to tell whether the grand jury understood that there were two units of prosecution alleged." Defs.' Mot. Dismiss Counts Three and Five, ECF No. 64, at 11-12.

As to the first two of the defendants' concerns, the government represents that "[a]t the charge conference, the government will ask for an instruction requiring the jury to agree unanimously on at least one of the charged means of obstruction, if it is to reach a guilty verdict on Counts Three and Five." Gov't Opp'n Mot. Dismiss Counts Three and Five ECF No. 86, at 9 n.2. At trial the defendants may also proffer a proposed special verdict form delineating clearly the required elements for conviction on Counts Three and Five. Any concerns regarding the propriety of a future jury verdict are thus obviated.

The defendants further claim that potential inclusion of two units of prosecution in Counts Three and Five will make it difficult for them to have knowledge of the charges against

them.  This contention strains credulity.  Counts Three and Five of the Superseding Indictment

charge the defendants with making false entries in the ORB, thereby "falsify[ing]" the ORB by

"falsely stating that required pollution prevention equipment had been used when it had not" for

the purpose of concealing illegal discharges of oil contaminated waste.  Superseding Indictment,

ECF No. 22, at 14, 16.  The allegations in these two counts make clear when the false entries

were made (i.e., during voyages ending on July 9, 2010 and July 14, 2011), where the false

entries were made (i.e., in the ORB), why the false entries were made, and what made the entries

false.  Thus, as the Court held in denying the defendants' motion for a bill of particulars, the

Superseding Indictment provides sufficient information for the defendants to understand the

charges against them, prepare a defense, and guard against the prospect of double jeopardy.

　　　　Finally, with regard to the defendants' final argument that Counts Three and Five should

be dismissed because they are unsure whether the grand jury charged both offenses, the

Superseding Indictment alleges that the defendants "did knowingly conceal, cover up, and

falsify, *and* make a false entry in a record and document."  *Id.* (emphasis added).  The

Superseding Indictment is clear that the grand jury believed that the defendants both falsified and

concealed entries in the ORB.

　　　　Accordingly, even if Section 1519 contains two units of prosecution, both units can be

properly charged in a single count due to the allegation that the defendants' criminal conduct was

part of an ongoing scheme of illegal conduct and because the defendants will face no prejudice

by inclusion of the allegedly duplicitous counts.  The Court therefore rejects the defendants'

argument that Counts Three and Five must be dismissed due to the alleged inclusion of two units

of prosecution in these counts.

### C. Counts Three and Five Are Not Duplicitous Because They Allege Multiple False Entries

The defendants contend that Counts Three and Five should be dismissed as duplicitous because "there is no doubt that the indictment purports to charge multiple false entries, rather than a single false entry, in each of Counts Three and Five."  Defs.' Mot. Dismiss Counts Three and Five, ECF No. 64, at 12.  There is no merit to this argument.

As explained above, "several acts may be charged in a single count if the acts represent a single, continuing scheme that occurred within a short period of time and that involved the same defendant."  *Klat*, 156 F.3d at 1266.  Indeed, Federal Rule of Criminal Procedure 7(c)(1) provides that "[a] count may allege . . . that the defendant committed [the offense] by one or more specified means."  With regard specifically to violations of § 1519, "the statute does not require the government to charge separate counts for each false entry in a document."  *Moyer*, 674 F.3d at 204; *see also Schmeltz*, 667 F.3d at 688.

Although the defendants contend otherwise, the government has set forth a continuing scheme of illegal conduct.  Counts Three and Five of the Superseding Indictment allege that the defendants falsified and concealed entries in the ORB, and that these violations continued to occur during their voyages in 2010 and 2011.  The defendants argue, however, that "[t]he vices of duplicity are particularly apparent in this prong of the counts [because] [t]he indictment does not identify any particular entry which is alleged to be false [and] [t]hat violates the Constitutional requirement of adequate notice."  Defs.' Mot. Dismiss Counts Three and Five, ECF No. 64, at 13.  This argument is erroneous.  The Superseding Indictment provides adequate notice of the illegal conduct in that it sets forth, specifically, on which voyages the alleged illegal acts occurred.  The defendants acknowledge that there are eighteen entries in the ORB for each of the two voyages referenced in the Superseding Indictment.  *Id.*  The government asserts that it

can prove Counts Three and Five on the theory that some, if not all, of the entries must be falsified since the ship routinely and continuously discharged oily waste without using the Oil Water Separator.  Gov't Suppl. Opp'n Defs.' Mot. Bill of Particulars, ECF No. 36, at 6.  Given this allegation, the government need not, and may not even be able to, identify the universe of allegedly false and omitted entries in the ORB.

As explained above, Counts Two and Four are not duplicitous because Section 1519 allegedly contains two units of prosecution or because the counts charge multiple false entries. Consequently, the defendants' motion to dismiss Counts Two and Four on grounds that these counts are duplicitous is denied.

## IV.     COUNTS TWO, THREE, FOUR AND FIVE ARE NOT MULTIPLICITOUS

In addition to the duplicity arguments, the defendants contend that Counts Three and Five are multiplicitous of Counts Two and Four.  Defendant Sanford also argues that Count Two is multiplicitous of Count Four, and Count Three is multiplicitous of Count Five.  The Court disagrees with all of these arguments.

### A.  Multiplicitous Counts in an Indictment

"An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *United States v. Brown*, No. 07-cr-75, 2007 WL 2007513, at *6 (D.D.C. July 9, 2007) (quoting *United States v. Harris*, 959 F.2d 246, 250 (D.C. Cir. 1992), *abrogated on other grounds*, *United States v. Stewart*, 246 F.3d 728 (D.C. Cir. 2001)); *see also United States v. Mahdi*, 598 F.3d 883, 887 (D.C. Cir. 2010).  "The danger of a multiplicitous indictment is that [a] defendant will be given multiple sentences for the same offense, thus violating the Double Jeopardy Clause of the Constitution." *United States v. Cook*, No. 07-cr-192, 2007 WL 3020081, at *1 (D.D.C. 2007); *United States v. Weathers*, 493 F.3d 229, 233 (D.C. Cir. 2007) ("The Fifth Amendment

guarantee against double jeopardy protects not only against a second trial for the same offense, but also against multiple punishments for the same offense," quoting *Whalen v. United States*, 445 U.S 684, 688 (1980)).  Moreover, a multiplicitous charge may "improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *Brown*, 2007 WL 2007513, at *6.  "To determine multiplicity *vel non*, courts generally apply the *Blockburger* test: Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not, i.e., whether either is a lesser included offense of the other." *Mahdi*, 598 F.3d at 888 (quoting *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999) and *Blockburger v. United States*, 284 U.S. 299, 304 (1932)) (internal quotation marks omitted).  While courts use the *Blockburger* test to assess whether a count is multiplicitous, the test "provides only a canon of construction, not a 'conclusive presumption of law.'"  *Id.*  As the D.C. Circuit noted,

> [t]here is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction. Thus, the *Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of Congress, that is, when the legislative intent is clear from the face of the statute or the legislative history.

*Id.* (internal citations and quotation marks omitted); *see also United States v. White*, 116 F.3d 903, 932 (D.C. Cir. 1997) ("Even if one crime is a lesser included offense of another, punishments may be imposed for both if Congress intended that they be imposed.").

Multiplicitous counts may be remedied after trial, during sentencing since the primary evil of multiplicity is double punishment for the same offense.  *Cook*, 2007 WL 3020081, at *1 ("[H]arm, if it exists in this case, can be remedied after trial should the jury return a verdict on all counts. There is no prejudice to defendant in allowing all of the counts to go to the jury, as both

sides agree that the pairs of counts are based on exactly the same facts."); *see also United States v. Clark*, 184 F.3d 858, 872 (D.C. Cir. 1999) ("detect[ing] no prejudice" in allowing multiplicitous counts to be tried where the evidence "was identical"). Dismissal of a charge based on multiplicity is premature because "if, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, . . . [and] the jury convicts on no more than one of the multiplicitous counts, there has been no violation of the defendant's right to be free from double jeopardy, for he will suffer no more than one punishment." *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006). Thus, multiplicity claims are often "better sorted out post-trial," *United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999), after the defendant knows the counts on which he has been convicted.

### B. Counts Three and Five Are Not Multiplicitous of Counts Two and Four

The defendants assert that the government should be barred from charging them with "both 'failure to maintain' an ORB (Counts Two and Four) and 'obstruction' (Counts Three and Five) [because] the same conduct charged in the latter is also conduct charged in the former," thus rendering Counts Two and Four multiplicitous of Counts Three and Five. Defs.' Mot. Dismiss Counts Three and Five, ECF No. 64, at 15. The Court should therefore require the government to elect between the two pairs of charges, according to the defendants, lest the defendants are inadvertently punished twice for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment.

To determine whether counts are multiplicitous, the court must assess whether each offense "requires proof of a fact which the other does not, i.e., whether either is a lesser included offense of the other." *Mahdi*, 598 F.3d at 888 (quoting *Blockburger*, 284 U.S. at 304). In this case, Counts Two and Four allege that the defendants knowingly failed to maintain an accurate

ORB in violation of APPS, 33 U.S.C. §1908(a), and 33 C.F.R. § 151.25. To obtain convictions for these charges, the government must prove that: (1) the *F/V San Nikunau* was a ship of 400 or more gross tons that was registered in a country other than the United States; (2) the defendants were a person in charge of the operation of the Oily Water Separator, the overboard discharge valve, or other *F/V San Nikunau* equipment involved in the overboard discharge of oil; (3) the defendants knowingly failed to fully and accurately maintain an ORB; and (4) the failure to maintain the ORB occurred while the *F/V San Nikunau* was in the navigable waters of, or at a port or terminal of, the United States.

Counts Three and Five charge the defendants with obstruction of justice in violation of 18 U.S.C. § 1519. These counts require the government to prove that the defendants: (1) knowingly altered, destroyed, mutilated, concealed, covered up, falsified, or made false entries in records, documents, or tangible objects; and (2) acted with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of a department or agency of the United States, that is, the United States Coast Guard.

The government contends that the APPS charges in Counts Two and Four and the obstruction charges in Counts Three and Five are not multiplicitous because the obstruction counts require an added *mens rea* element, namely, that the defendants intended to impede the investigation of the Coast Guard when they falsified and concealed records. Gov't Opp'n Mot. Dismiss Counts Three and Five, ECF No. 86, at 5-6. The addition of this *mens rea* element, according to the government, is enough to distinguish the obstruction charges from the APPS counts. *Id.* at 6. The government further contends that the APPS counts require the government to prove that the *F/V San Nikunau* was a ship weighing over 400 tons, which is not a required element of the obstruction charges. *Id.*

The defendants counter that the addition of the *mens rea* element to the obstruction charges is not enough to differentiate the APPS and obstruction charges because the alleged *actus reus* for both counts is identical. They contend that because "the same alleged facts underpin both sets of charges, it is multiplicitous to charge both a § 1519 and a § 1903(a) [sic] violation." Defs.' Reply in Supp. Mot. Dismiss Counts Three and Five, ECF No. 110, at 7. The Court disagrees. While the conduct underlying the falsification and obstruction counts may be similar, the statutes were designed to prevent different evils, both of which are alleged to have occurred. As the added *mens rea* element of the obstruction charges make clear, § 1519 criminalizes the defendants' alleged attempt to impede the Coast Guard's investigation of illegal pollution. This is distinct from the defendants' alleged failure to record entries in the ORB in violation of 33 U.S.C. §1908(a) and 33 C.F.R. § 151.25. Given that the elements of the APPS and obstruction counts are not identical, and each is intended to criminalize specific and distinct conduct, Counts Two and Four are not multiplicitous of Counts Three and Five.

### C. Count Two Is Not Multiplicitous of Count Four, and Count Three Is Not Multiplicitous of Count Five

Defendant Sanford asserts two other arguments to support dismissal of counts Two through Five in the Superseding Indictment. First, Sanford argues that "[t]he 'falsified record' prongs of Counts Three and Five are multiplicitous, for they have charged Sanford, Ltd. in two counts for falsifying of the same document." Def. Sanford's Mot. Dismiss, ECF No. 64, at 17. In *Moyer* and *Schmeltz* the Third and Sixth Circuits, respectively, held that 28 U.S.C. § 1519 was "intended to punish the falsification of a document, rather than specific statements or omissions within a document." *Schmeltz*, 667 F.3d at 688; *see also Moyer*, 674 F.3d at 204. Relying on these cases, Sanford contends that "there was only one Oil Record Book, which is the record allegedly falsified" and, consequently, no more than one offense under § 1519 may be charged.

Def. Sanford's Mot. Dismiss, ECF No. 64, at 18. Sanford's second argument is that Counts Two and Four are multiplicitous because a "'failure to maintain' is a continuing offense [and] may not be broken into multiple charges based on the number of times the vessel entered U.S. waters." *Id.* at 19.

The government asserts that all counts of the Superseding Indictment are proper, and not multiplicitous, because Counts Two and Three charge defendants Sanford and Pogue with a violation of APPS and obstruction of justice for a voyage ending in July 2010, and Counts Four and Five charge defendants Sanford and Vano with the same offenses for a voyage ending in 2011. The Counts thus relate to conduct ascribed to different Chief Engineers, for different voyages, and for separate instances of falsification of the ORB. In addition, the government indicates that "[t]he Oil Record Book is not exactly the same book for each port call – in between the two there were additional false entries and omissions." Gov't Opp'n Mot. Dismiss Counts Three and Five, ECF No. 86, at 8-9. The Court agrees.

Defendant Sanford may be correct that the ORB is bound together in one book, but the precise physical compilation of the documents is immaterial. The ORB contains documentation for discharges that occurred on each voyage, and the government charges the defendants for false entries made on two particular voyages ending in July 2010 and July 2011, which relate to separate counts in the Superseding Indictment. More importantly, Counts Two and Three and Counts Four and Five assert charges against different Chief Engineers of the *F/V San Nikunau*. Given the *mens rea* requirement, which must be alleged separately for the Chief Engineers allegedly responsible for falsification of the ORB, and defendant Sanford's vicarious liability for actions of each Chief Engineer, allegations against defendants Pogue and Vano must be asserted

in separate counts.  Count Two is therefore not multiplicitous of Count Four, and Count Three is not multiplicitous of Count Five.

### D.  Even if Counts in the Indictment are Multiplicitous the Defendants Cannot Show Any Prejudice

The Court concludes that the defendants' multiplicity arguments are not persuasive. Even if the Court were persuaded by their multiplicity arguments, however, dismissal of counts in the Superseding Indictment would not be warranted at this time.  While the defendants are required to assert their argument that charges in the Superseding Indictment are multiplicitous through pre-trial motion, *see* FED. R. CRIM. P. 12(b)(3)(B), "multiplicity claims are better sorted out post-trial."  *Hubbell*, 177 F.3d at 14.  The primary evil of multiplicitous charges is that a defendant will be punished twice for the same offense.  This harm, if it exists at all, may be remedied during the sentencing phase if the jury returns a conviction on all counts of the Superseding Indictment.  As the Second Circuit explained in *United States v. Josephberg*:

> If the jury convicts on no more than one of the multiplicitous counts, there has been no violation of the defendant's right to be free from double jeopardy, for he will suffer no more than one punishment.  If the jury convicts on more than one multiplicitous count, the defendant's right not to suffer multiple punishments for the same offense will be protected by having the court enter judgment on only one of the multiplicitous counts.

459 F.3d 350, 355 (2d Cir. 2006) (per curiam).

The defendants have not demonstrated that they would suffer any prejudice from allowing the government to proceed on the allegedly multiplicitous counts, particularly since the defendants assert that the charges encompass the same underlying facts and conduct.  *See Cook*, 2007 WL 3020081, at *1 (denying without prejudice defendant's motion to dismiss without prejudice and stating that is "most appropriate" to resolve multiplicity arguments post-trial, particularly because "[t]here is no prejudice to defendant in allowing all of the counts to go to the

jury, as both sides agree that the pairs of counts are based on exactly the same facts."); *United States v. Cisneros*, 26 F. Supp. 2d 24, 44-45 (D.D.C. 1998) (denying without prejudice the defendant's pre-trial motion, stating that "[t]he Court can resolve any potential multiplicity issues at or after trial."); *see also Josephberg,* 459 F.3d at 355 ("Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed."); *United States v. Gupta*, No. 11-cr-907, 2012 WL 1066804, at *2 (S.D.N.Y. Mar. 27, 2012) (denying without prejudice the defendant's motion to consolidate or dismiss multiplicitous charges and stating that the issue can be "raised if and when it becomes ripe."); *United States v. Jahedi*, 681 F. Supp. 2d 430, 437 (S.D.N.Y. 2009) (declining to address the defendant's argument that the indictment was multiplicitous until after trial).

For the reasons explained above, the defendants' arguments that Counts Two, Three, Four, and Five are multiplicitous are unavailing. The defendants' motion to dismiss these counts on these grounds is consequently denied.

## V.     CONCLUSION

For the reasons explained above, the Court denies: the defendants' Motion to Dismiss Counts Two and Four of the Superseding Indictment and, for the same reasons, to dismiss Count One, ECF No. 71; the defendants' Motion to Dismiss Counts Three and Five of the Superseding Indictment, ECF No. 64; and defendant Sanford's Motion to Dismiss Counts Two and Four or to Require Election of One of Them, ECF No. 68. An Order consistent with this Memorandum Opinion shall be entered.


**DATE: MAY 14, 2012**                         /s/ *Beryl A. Howell*
                                                                 BERYL A. HOWELL
                                                                 United States District Judge